IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DANNY RICKY HEADLEY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:06-cv-1083-MEF |
| | ) | |
| CHILTON COUNTY, ALABAMA, | ) | |
| et al. | ) | |
| | ) | |
| Defendants. | ) | |

BRIEF IN SUPPORT OF MOTION
TO DISMISS OF NEELY STRENGTH

A.  Introduction

This action was commenced on December 6, 2006 by the filing of a complaint

by plaintiff Danny Ricky Headley in the United States District Court for the Middle

District of Alabama.  The matters at issue in this case arose out of a dispute over

whether plaintiff Headley, as a youthful offender, was required to register as a sex

offender under Alabama law.  Plaintiff Headley named as the defendants in this action

a defendant designated as "Chilton County (Chilton County Sheriff's Department),"

former Chilton County Sheriff Neely Strength, and State Probation Officer Chris

Maturi.

According to the complaint, Headley was adjudicated as a youthful offender

on an underlying charge of rape in the second degree in September of 1997.

(Complaint ¶¶ 6-9). He alleges that he was instructed by his probation officer, Chris

Maturi, that he was required to register as a sex offender and that Sheriff Strength

photographed Headley and issued him a "felony card" which, according to the

complaint, Sheriff Strength instructed Headley to keep in his possession at all times.

(See Complaint, ¶¶13-16). Headley alleges that he was told on several occasions later

that he did not have to register and, after not registering, was arrested on a warrant

for "failure to notify" in May of 2006. (Complaint, ¶¶ 22-24, 30-31, and 37-39).

Sheriff Strength has filed a motion to dismiss. This brief is submitted in support of

the motion to dismiss.

B.     Sheriff Strength Can Have No Liability for
       Plaintiff's State Law Tort Claims.

Sheriff Strength is entitled to absolute immunity from the state law tort claims

alleged against him in the complaint in this case under Article I, § 14 of the Alabama

Constitution of 1901. In the 1987 decision of Parker v. Amerson, 519 So. 2d 442

(Ala. 1987), the Alabama Supreme Court considered the matter of what immunity an

Alabama sheriff had under Alabama law from state law tort claims. The claims in

Parker arose out of the abduction and rape of the plaintiff, a female inmate at the

Macon County Jail, by a jailer. The plaintiff alleged that the Macon County Sheriff

had committed "negligent and wanton acts that caused her to suffer harm." 519 So.

2d at 446. The plaintiff claimed that the sheriff had negligently and wantonly employed the jailer who had allegedly abducted and raped the plaintiff.

The Supreme Court held that the sheriff had absolute immunity from the plaintiff's claims. In so holding, the Supreme Court observed that the sheriff was a member of the Executive Department of state government under Article V, § 112, of the Alabama Constitution of 1901. Article I, § 14, of the Alabama Constitution of 1901, provides as follows:

> That the State of Alabama shall never be made a defendant
> in any court of law or equity.

The Supreme Court held that Article I, § 14, provides immunity to an Alabama sheriff from any claims arising out of the performance of his duties in all but certain very narrow exceptions. These exceptions are:

> Section 14 immunity is not applicable when an action is
> brought: (1) to compel state officials to perform their legal
> duties; (2) to compel state officials to perform ministerial
> acts; (3) to enjoin state officials from enforcing
> unconstitutional laws; (4) to enjoin state officials from
> acting in bad faith, fraudulently, beyond their authority, or
> under mistaken interpretation of the law, or (5) to seek
> construction of a statute under the Declaratory Judgment
> Act.

Parker, 519 So. 2d at 445. The Supreme Court in Parker held that none of the above quoted exceptions applied to claims brought against a sheriff arising out of

3

allegations of negligence and wantonness in the performance of his duties. The Supreme Court held that "Section 14 and judicial precedent mandate the conclusion that Sheriff Amerson is immune from suit." 519 So. 2d at 446. The Supreme Court stated:

> This Court has specifically held that a suit against a sheriff is "essentially a suit against the state" and thus, "not maintainable" [citation omitted]. Thus, § 14 and judicial precedent mandate the conclusion that Sheriff Amerson is immune from suit.

Parker, 519 So. 2d at 446.

Although none of the exceptions recognized in Parker to the absolute immunity available to sheriffs and their deputies under Article I, § 14 has any application in this case, it is clear that the exceptions *only* apply to claims for *injunctive* relief and not to claims for monetary damages such are sought by plaintiffs in this case. The language in Parker setting out the exceptions is clear to this effect. The exceptions only apply to actions "to *compel* state officials to perform their legal duties . . . to *compel* state officials to perform ministerial acts . . . to *enjoin* state officials from enforcing unconstitutional laws [and] to *enjoin* state officials from acting in bad faith, fraudulently, beyond their authority, or under mistaken interpretation of the law . . ." Parker, 519 So. 2d at 445. See also Ex Parte Woodward, 859 So. 2d 425, 427 n. 4 (Ala. 2003); Ex Parte Purvis, 689 So. 2d at 796 n. 2 (Ala. 1996) (Houston, J.

4

concurring specially). The Eleventh Circuit has also explicitly recognized this rule. In <u>Tinney v. Shores</u>, 77 F.3d 378 (11th Cir. 1996), an Alabama sheriff and his deputy were sued for trespass and conversion. In holding that both were entitled to absolute sovereign immunity from the plaintiff's claims, the Eleventh Circuit stated: "The Alabama Supreme Court [has] explained that under Article I, § 14, the only exceptions to a sheriff's immunity from suit are actions brought to enjoin the sheriff's conduct." <u>Tinney</u> 77 F.3d at 383, citing <u>Alexander v. Hatfield</u>, 652 So. 2d 1142, 1143 (Ala. 1994) (emphasis omitted). The Eleventh Circuit in <u>Tinney</u> continued by stating that because "[the sheriff and his deputy] in this case are being sued for damages, based upon claims of conversion and trespass, and not for injunctive relief . . . [they] are entitled to sovereign immunity from the state law claims." <u>Id</u>.

Because they are constitutional officers, the Article I, § 14 immunity to which Alabama sheriffs and their deputies are entitled from state law tort claims is an absolute, and not a discretionary function immunity. See <u>Sheth v. Webster</u>, 145 F.3d 1231, 1236 (11th Cir. 1998) ("Alabama law recognizes at least two types of immunity from suit or liability for the individual executive acts of public officers. [One] is the absolute 'sovereign' immunity, except for injunctive relief, afforded to certain state constitutional officers, including sheriffs and deputy sheriffs . . . This constitutional officer sovereign immunity is pursuant to Article I, Section 14 of the Alabama

5

Constitution of 1901. Alabama law also extends a form of immunity, not absolute, to state, as opposed to municipal and county, executive officers who do not hold constitutional offices. This form of immunity is described as 'discretionary function' immunity.") See also Ex Parte Sumter County, ___ So.2d ___ (Ala. Sept. 29, 2006), 2006 WL 2790036 at * 4 (holding that the exceptions to state-agent discretionary function immunity set forth in Ex Parte Cranman, 792 So.2d 392 (Ala. 2000) do not apply to the absolute immunity to which Alabama sheriffs and their deputies are entitled under Article I, § 14); Ex Parte Purvis, 689 So.2d 794, 795 (Ala. 1996) (refusing to apply exceptions to the discretionary function immunity applicable to claims against state employees to a claim against sheriff and deputy because such exceptions do "not deal with claims against a sheriff and a deputy sheriff or other constitutional officer. . .")

The Article I, § 14, immunity to which Alabama sheriffs and their deputies are entitled from state law tort claims applies even if it is alleged that they acted willfully, maliciously or intentionally. See, e.g., Ex parte Purvis, 689 So. 2d at 795-96(Sheriff and deputy sheriff entitled to absolute immunity under Article I, § 14, for "willful conduct."); Alexander v. Hatfield, 652 So. 2d 1142 (Ala. 1994) (Deputy sheriff entitled to absolute immunity from claim for "bad faith" service of process); Karrick v. Johnson, 659 So. 2d 77 (Ala. 1995) (Deputy sheriff entitled to absolute immunity

from claim of malicious prosecution). The absolute immunity available to Alabama

sheriffs and their deputies for intentional tort claims even where it is alleged that the

sheriff or deputy acted willfully or maliciously has also been recognized by the

Eleventh Circuit. In <u>McMillian v. Johnson</u>, 88 F.3d 1554 (11th Cir. 1996), <u>cert.</u>

<u>denied</u>, 521 U.S. 1121 (1997), the Eleventh Circuit considered the issue of whether

Alabama sheriffs were entitled to absolute immunity under Article I, § 14, of the

<u>Alabama Constitution of 1901</u>, from state law claims for malicious prosecution, abuse

of process and outrage allegedly arising out of malicious and intentional acts. The

Court in <u>McMillian</u> held that despite some earlier confusion in the case law, the

Eleventh Circuit in <u>Tinney v. Shores</u>, 77 F.3d 378 (11th Cir. 1996), made it clear that

Alabama sheriffs and their deputies were entitled to absolute immunity, even when

the claim arose out of the alleged malicious and intentional wrongdoing of the sheriff

or his deputies. 88 F.3d at 1571-72. See also <u>Williams v. Goldsmith</u>, 4 F. Supp. 2d

1112, 1128 (M.D. Ala. 1998).

The absolute immunity to which Alabama sheriffs are entitled from state law

tort claims also applies to claims asserted against them, as here, in their official

capacities, as well as claims asserted against them in their individual capacities. See

<u>Tinney</u>, 77 F.3d at 383("Under Alabama law, sheriffs and deputy sheriffs, in their

official capacities and individually, are absolutely immune from suit when the action

is, in effect, one against the state."). See also <u>Lancaster v. Monroe County</u>, 116 F.3d 1419, 1431 (11th Cir. 1997) ("The Alabama Supreme Court has held that a suit brought against a sheriff or a deputy sheriff in his individual capacity alleging negligence in the performance of his statutory duties should be treated as a suit against the state."); <u>Hereford v. Jefferson County</u>, 586 So. 2d 209-10 (Ala. 1991) (Jefferson County sheriff entitled to absolute immunity from claims asserted against him "individually and in his capacity as sheriff of Jefferson County"); <u>Alexander</u>, 652 So. 2d at 1143 (Montgomery County deputy sheriff entitled to absolute immunity from claims asserted against her individually and in her official capacity as a Montgomery County sheriff's department deputy.)

By virtue of the foregoing authorities, in this Circuit it is now clearly settled that sheriffs in Alabama are entitled to absolute immunity and to dismissal of any state law tort claims alleged against them in an action in federal court. See <u>Williams</u>, 4 F. Supp. 2d at 1128 ("The Eleventh Circuit has said that [absolute] immunity clearly applies [to sheriffs and deputy sheriffs]; therefore it does . . . . Since Eleventh Circuit's decisions are binding on this court, its interpretation must be considered by this court to be a correct statement of Alabama law."); <u>Flood v. State of Ala. Dept. Ind. Rel.</u>, 948 F. Supp. 1535, 1549 n. 53 (M.D. 1996) ("Similarly, this court is bound by <u>Tinney</u> [v. Shores, 77 F.3d 378, 383 (11th Cir. 1996), which held sheriffs and

8

deputies under Alabama law are entitled to absolute immunity], regardless as to whether <u>Tinney</u> is right or wrong under Alabama law."). Based upon the foregoing, it is clear that the plaintiff's state law claims alleged in the complaint in this case against Sheriff Strength are not maintainable as a matter of law in this action. Sheriff Strength's motion to dismiss the plaintiffs' state law tort claims is due to be granted.

      C.    The Complaint Does Not Allege a Maintainable Claim Against Sheriff Strength Under 42 U.S.C. § 1983.

Sheriff Strength has been sued in this action under § 1983 in both his individual and official capacities. Neither claim is maintainable.

      1.    <u>Official Capacity Claims.</u>

As the United States Supreme Court has "explained[,] . . . a suit against a governmental officer 'in his official capacity' is the same as a suit 'against [the] entity of which [the] officer is an agent,'" <u>McMillian v. Monroe County</u>, 520 U.S. 781, 785 n. 2 (1997) quoting <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985). (Internal quotations omitted). The imposition of liability against a defendant "in such an 'official capacity suit' imposes liability on the entity that [the officer] represents.'" <u>Id</u>. quoting <u>Brandon v. Holt</u>, 469 U.S. 464, 471 (1985).

Alabama sheriffs and their deputies are state, and not county officials under Alabama law. See <u>Parker v. Amerson</u>, 519 So. 2d 442, 442-43 (Ala. 1987). As a

9

consequence, an action under 42 U.S.C. § 1983 against an Alabama sheriff or deputy sheriff in their official capacity is, in essence, an action against the State of Alabama which is barred by the Eleventh Amendment. See <u>Lancaster v. Monroe County</u>, 116 F.3d 1419, 1429 (11th Cir. 1997) (claims against Alabama sheriffs in their official capacities are barred by the Eleventh Amendment); <u>Carr v. City of Florence</u>, 916 F.2d 1521, 1527 (11th Cir. 1990) (claims against Alabama deputy sheriffs in their official capacities are barred by the Eleventh Amendment).

An additional reason exists why plaintiffs have no maintainable claim against Sheriff Strength in this action. Because Sheriff Strength is a state, and not county official, and is sued only in his official capacity, he does not constitute a "person" within the meaning of 42 U.S.C. § 1983. In <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58 (1989), the Supreme Court held that states and state officials who are sued in their official capacities do not constitute claims against "persons" subject to liability under § 1983. As a consequence, claims against Alabama sheriffs in their official capacities do not constitute maintainable claims under § 1983. See <u>Adams v. Franklin</u>, 111 F. Supp. 2d 1255, 1263 (M.D. Ala. 2000). See also <u>Carr</u>, 916 F.2d at 1525 n. 3.

### 2.    Individual Capacity Claims.

Sheriff Strength has moved to dismiss the complaint in this case for failure to

state a claim and has asserted the defense of qualified immunity. The two issues are intertwined. See <u>Wooten v. Campbell</u>, 49 F.3d 696, 699 (11th Cir. 1995):

> As the Supreme Court states, "[a] necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." Siegert v. Gilley, 500 U.S. 226, 232 [111 S.Ct. 1789, 1793] (1991).

The Eleventh Circuit employs a two-pronged analysis for determining whether the qualified immunity defense, as defined in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), protects a government officer from individual § 1983 liability. To invoke the qualified immunity defense, the officer has the initial burden of proving that he was acting within the scope of his discretionary authority at the time the alleged wrongful act occurred. <u>Stough v. Gallagher</u>, 967 F.2d 1523, 1526 (11th Cir. 1992); <u>Rich v. Dollar</u>, 841 F.2d 1558, 1562 (11th Cir. 1988); <u>Zeigler v. Jackson</u>, 716 F.2d 847, 849 (11th Cir. 1983). If this requirement is met, the burden then shifts to the plaintiff to show lack of good faith on the part of the officer. <u>Stough</u>, 967 F.2d at 1526. The plaintiff can satisfy this burden only by proving that officer's conduct violated "clearly established" constitutional law or a federal statute. <u>Id</u>. Whether the plaintiff has carried this burden is a question of law for the trial court to decide. <u>Bailey v. Bd. Of Comm'rs</u>, 956 F.2d 1112, 1126 (11th Cir.), <u>cert. denied</u>, 506 U.S. 832 (1992).

11

The officer's burden under the first prong – that is, showing that he acted within the scope of his "discretionary authority" – is a relatively simple task. According to the Eleventh Circuit, all that is required is for the officer to show "objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." Rich, 841 F.2d at 1564. In determining whether this test is met, there is *no* analysis of whether the officer actually acted lawfully. See Sims v. Metropolitan Dade County, 972 F.2d 1230, 1236 (11th Cir. 1992). Rather, the issue is whether "the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of [the officer's] discretionary duties." Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1282 (11th Cir. 1998). As such, "[i]t is perfectly logical for a court to find that someone who was acting illegally was acting within his discretionary authority." Godby v. Montgomery Co. Bd. Of Educ., 996 F. Supp. 1390, 1401 (M.D. Ala. 1998). It is clear from the allegations of the complaint in this case that the actions complained of on the part of Sheriff Strength were actions undertaken by him in the performance of his official duties as sheriff. (See Complaint, ¶¶ 14-16).

By stark contrast, the plaintiff's burden under the second prong – that is, showing that Sheriff Strength violated "clearly established" law – is a heavy and

difficult one to satisfy. The Supreme Court's decision in <u>Anderson v. Creighton</u>, 483

U.S. 635 (1987), explains what is meant by "clearly established" law:

> [O]ur cases establish that the right the official is alleged to
> have violated must have been "clearly established" in a
> more particularized, and hence more relevant, sense: The
> contours of the right must be sufficiently clear that a
> reasonable official would understand that what he is doing
> violates that right. This is not to say that an official action
> is protected by qualified immunity unless the very action in
> question has previously been held unlawful, but it is to say
> that in the light of pre-existing law the unlawfulness must
> be apparent.

<u>Anderson</u>, 483 U.S. at 640 (citations omitted). According to the Supreme Court, the

impermissible consequence of applying the "clearly established" law test too

generally is that "[p]laintiffs would be able to convert the rule of qualified immunity

. . . into a rule of virtually unqualified liability simply by alleging [a] violation of

extremely abstract rights." <u>Id</u>. at 639.

In <u>Hope v. Pelzer</u>, 536 U.S. 730, 741 (2002), the Supreme Court stated that the

"salient question" for purposes of determining whether a violation of clearly

established law has occurred is "whether the state of the law [at the time of the

challenged conduct] gave [the government actor] *fair warning* that [his or her] alleged

treatment [of the plaintiff] was unconstitutional." (emphasis added). The Supreme

Court has cautioned, however, that the inquiry into whether a constitutional right is

clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier v. Katz, 533 U.S. 194, 201 (2001). See also Anderson, 483 U.S. at 639-41 (cautioning against identifying constitutional rights at a general level and instead requiring an objective "fact-specific" inquiry based on information possessed by the government actor). Thus, unless a plaintiff in a § 1983 case can point to a case that fairly warns the government actor of the unconstitutionality of the challenged conduct, qualified immunity should protect the officer from liability under 42 U.S.C. § 1983. See e.g., Wilson v. Layne, 526 U.S. 603, 604 (1999) (granting qualified immunity where plaintiff could not point to case law existing at the time of the incident which clearly established the rule of law upon which the plaintiff sought to rely); Saucier, 533 U.S. at 201-02, 209 (granting qualified immunity where the plaintiff had not "identified any case demonstrating a clearly established rule prohibiting the officer from acting as he did . . ."). See also Vinyard v. Wilson, 311 F. 3d 1340, 1351-1353 (11th Cir. 2002) (recognizing that, based on the Supreme Court's decision in Hope that unless a constitutional provision directly prohibits the challenged conduct, or a case had previously held the challenged conduct to be unconstitutional under any circumstances, before a government actor may be stripped of qualified immunity, a § 1983 plaintiff must show that case law with "a very high degree of prior factual particularity" had

previously determined the conduct to be unconstitutional).

Measured against this standard, the claims alleged against Sheriff Strength in the complaint in this case clearly do not pass muster. Headley alleges that after Probation Officer Maturi informed Headley that he would have to "provide a DNA sample, fingerprints and a photograph," Headley proceeded to the Chilton County Sheriff's Department. (Complaint ¶ 14). Headley alleges that upon arrival at the sheriff's department, he "was photographed by Strength and placed into the [sex offender] data base." (Complaint ¶ 15). According to the complaint, after this occurred, "Strength issued Ricky Headley a felony card, which was signed by Strength, and instructed Ricky Headley to keep the card in his possession at all times." (Complaint ¶ 16). These allegations constitute the *sole* allegations of conduct on the part of Sheriff Strength in this action.

These allegations do not allege a clear violation of a federally protected right. In 1998, the registration of sex offenders in Alabama was governed by the Community Notification Act, §§ 15-20-20 *et seq.*, Code of Alabama, (1975), and by § 13A-11-200, *et seq.*, Code of Alabama, (1975). By reason of an amendment to the Community Notification Act which became effective August 1, 1998, all persons who adjudicated youthful offenders in sex crime cases were required to register under the Act. See § (2) of Act 98-489, Acts of Alabama, 1998. Act 98-489 amended § 15-20-

21(3) of the Act so as to provide that a "conviction" for which registration was required was defined as follows: "A determination of guilt as the result of a plea, trial, or *adjudication as a youthful offender* or a delinquent, regardless of whether adjudication is withheld." (emphasis added). As a consequence of this amendment to § 15-20-21(3), at the time of Headley's registration as a sex offender in September of 1998, persons who had been adjudicated as youthful offenders were required to register as sex offenders under the Community Notification Act. See, e.g., 253 Ala. Op. Att. Gen. 27, 1998 WL 1038074. ("Under the Community Notification Act, youthful offenders are required to register as convicted sex offenders."); Alabama Attorney General Opinion No. 99-0040, p. 2 ("The Community Notification Act, found in Section 15-20-20, *et seq.*, of the <u>Code of Alabama</u>, was amended in 1998 by Alabama Act No. 98-49. . . . After the amendment, the Community Notification Act is now applicable to those adjudicated as a youthful offender.")[1]

The Community Notification Act was substantially amended in 1999 by Act 99-472, Acts of Alabama. which became effective September 1, 1999. However, from the time of the enactment of Act 98-489 until the enactment of Act 99-472 , § 15-20-21(3) specifically required registration of persons adjudicated as youthful offenders

---

[1]    Opinion 99-0040 can be found at http://www.ago.alabama.gov/pdfopinions/99-0040.pdf.

as sex offenders without qualification. Sheriff Strength left office in January of 1999, and was replaced by in office by as Sheriff of Chilton County by Sheriff Billy Wayne Fulmer.[2] As a consequence, at the time of Headley's registration as a sex offender in September of 1998, and at all times thereafter while Sheriff Strength remained in office, plaintiff Headley was explicitly required under the Community Notification Act to register as a sex offender. No judicial determination by either the Alabama state courts or federal courts ever had held, at the time that Sheriff Strength was alleged to have committed the acts or omissions alleged in the complaint in this case, (or indeed during the entire time he remained in office thereafter), that requiring a youthful offender to register as a sex offender under the Community Notification Act was unconstitutional.[3] As a consequence, Sheriff Strength is entitled to qualified

---

[2] This Court can take judicial notice under Rule 201(b) Fed. R. Evid., that Sheriff Strength left office as Sheriff of Chilton County, Alabama in January of 1999 and that Sheriff Fulmer succeeded him in office at that time. See e.g., Corbin v. Cannon, 838 F. Supp. 561,563 (M.D. Fla. 1993) (fact that sheriff was not in office at a given time constitutes fact of which judicial notice can be taken under Rule 201(b) as "a readily and accurately verifiable fact").

[3] In 1999, the provisions of the Community Notification Act were declared unconstitutional as they applied to *juveniles*. See M.W.D., Jr. v. State, 748 So.2d 225 (Ala. Crim. App. 1999) and State v. C.M., 746 So.2d 410 (Ala. Crim. App. 1999). However, these decisions are inapplicable to plaintiff Headley for at least two reasons. First, at the time he registered as a sex offender in September of 1998, Headley was over the age of nineteen years. (See Complaint ¶ 2). As a consequence, plaintiff Headley was not a juvenile as were the plaintiffs in M.W.D., Jr. and C.M. Instead, Headley was an adult under the terms and provisions of the Community

immunity from the plaintiff's § 1983 claims in this action.

> ### D. The § 1983 Claims Against Sheriff Strength are Barred by the Expiration of the Applicable Statute of Limitations.

As discussed above, all of the acts or omissions alleged in the complaint in this case to have been committed by Sheriff Strength occurred in 1998, and Sheriff Strength left office in January of 1999.  Because he was no longer sheriff as of January of 1999, any claims arising out of the matters alleged in the complaint, or any possible acts or omissions that he could have committed while in office, are time-barred by the expiration of the two-year statute of limitations applicable to § 1983 claims in federal court in Alabama.  See Jones v. Preuit & Mauldin, 876 F.2d 1483-84 (11th Cir. 1989).  See also Lufkin v. McCallum, 956 F.2d 1104, 1105 (11th Cir. 1992).

### Conclusion

The motion to dismiss of former Chilton County Sheriff Neely Strength is due to be granted, and Sheriff Strength is due to be dismissed as a defendant in this action.

---

Notification Act, see § 2 of Act No. 98-489, amending § 15-20-21(a)(1), and he was an adult under general Alabama law.  See § 26-1-1, Code of Alabama, (1975).  Secondly, Sheriff Strength left office in January of 1999 before either of the decisions in M.W.D., Jr. and C.M. was rendered.

s/ George W. Royer, Jr.
George W. Royer, Jr.

LANIER FORD SHAVER & PAYNE, P.C.
200 West Side Square
Suite 5000
Huntsville, AL 35801
Phone: 256-535-1100
Fax: 256-533-9322
E-mail: gwr@lfsp.com

CERTIFICATE OF SERVICE

I hereby certify that I have filed the foregoing upon the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Roianne Houlton Conner
250 Winton Blount Loop
Montgomery, AL 36117

on this 22nd day of December, 2006.

s/ George W. Royer, Jr.
George W. Royer, Jr.