IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DANNY RICKY HEADLEY ) | |
|     Plaintiff ) | |
| ) | |
| v. ) | CASE NO: 2:06-CV-1083-MEF |
| ) | |
| ) | |
| CHILTON COUNTY, ALABAMA, ) | |
| et al. ) | |
|     Defendants. ) | |
| ) | |

BRIEF IN SUPPORT OF MOTION
TO DISMISS CHRIS MATURI

I. Introduction

Plaintiff filed his complaint on December 6th, 2006 disputing that he, as a youthful offender, was required to register as a sex offender under Alabama law. Chilton County (Chilton County Sheriff's Department), Chris Maturi (Alabama Probation and Parole officer), and Neely Strength (former Sheriff of Chilton County) are named Defendants in this action. Maturi and Strength are being sued in their official and individual capacities.

Plaintiff was granted youthful offender on the underlying charge of Rape II on March 27th, 1997 and pled guilty on the same day (Complaint, para. 6-9). Plaintiff was placed on probation for eighteen months by the

1

Chilton County Circuit Court on April 7th, 1997 (Complaint, para. 10). Plaintiff's probation was successfully terminated by the Court on December 17, 1998 (Complaint, para. 19). The complaint alleges that Marturi instructed Plaintiff to register with the Chilton County Sheriff's Department, as a sex offender, in September 1998, when the Plaintiff received a felony registration card and registration information in the mail (Complaint, para. 13-14). Sheriff Strength took his photograph and issued him a "felony card" with the instruction to keep it in his possession at all times (Complaint, para. 15-16).

Plaintiff was told in September 1999 he did *not* have to register due to his youthful offender status (Complaint, para. 22-24). In September 2000 the Plaintiff received another registration card and returned it to the Chilton County Sheriff's Department (Complaint, para.25). He received not further registration forms form 2001 until 2006 (Complaint, para. 26).

On May 11, 2006 Plaintiff was informed that the Chilton County Sheriff's Department had a warrant outstanding for his arrest for failing to register (Complaint, para. 37). The failing to register case was no-billed by the Chilton County Grand Jury in August 2006.

## II. Defendant Chris Maturi is Entitle to Immunity for Plaintiff's State Law Tort Claims

*State Agent Immunity:*

Defendant Chris Maturi's alleged actions in the case at bar are those of a probation and parole officer for the State of Alabama in supervising Plaintiff while on probation. The Plaintiff was placed on probation in April 1997 and assigned to Maturi for supervision (Complaint, para. 10-11). The complaint cites Maturi's action as telling the Plaintiff he would have to provide a DNA sample and register as a sex offender with the Chilton County Sheriff's Department, when the Plaintiff presented him with the registration information (Compaint, para. 13-14). Maturi's actions were within the scope of his authority as a state probation and parole officer and did not violate clearly established law. *Ex Parte Cranman, 792 So.2d 392, 405 (Ala.2000),* restates the general law on this topic.

> A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's (1) formulating plans, policies, or designs; or (2) exercising his or her judgment in the administration of a department or agency of government, including,

3

but not limited to, examples such as making administrative adjudications, allocating resources, negotiating contracts, or hiring, firing, transferring, assigning, or supervising personnel; or (3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or (4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or (5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.

After setting forth the type of conduct which entitles a state official to immunity, the court set out the exceptions to state-agent immunity, as follows:

A state agent shall not be immune for civil liability in his or her personal capacity (1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the

4

activities of a government agency require otherwise; or (2) when the state agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

Maturi was clearly exercising his duties, within the scope of his authority, and in accordance with current state law to have Plaintiff provide a DNA sample and go to the Chilton County Sheriff's Department to register. Maturi is therefore entitled to state-agent immunity.

III. <u>Defendant Chris Maturi is Entitle to Absolute Immunity for Plaintiff's §1983 Claims When Sued in His Official Capacity Seeking Monetary Damages and Qualified Immunity When Sued for Injunctive Relief</u>

*Official Capacity:*

Chris Maturi, as a state probation and parole officer, was assigned to supervise Plaintiff while on probation. As an agent for the State, Maturi is absolutely immune from § 1983 claims for monetary damages, when sued in his official capacity.

State officials literally are persons. But a suit against a State official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Brandon v. Holt, 469 U.S. 464, 471, 105*

*S.Ct. 873, 877, 83 L.Ed.2d 878 (1985).* As such, it is no different from a suit against the State itself. *See, e.g., Kentucky v. Graham, 473 U.S. 159, 165-166, 105 S.Ct. 3099, 3104-3105, 87 L.Ed.2d 114 (1985)*. Neither the State of Alabama nor its officials may be sued under §1983 as a means of obtaining either monetary or other relief from the State. *Will v. Michigan Department of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312.*

*Individual Capacity:*

Defendant Maturi's only actions cited in the complaint fails to state a claim upon which relief may be granted (Complaint, para. 11-14). Maturi's taking a DNA sample and directing Plaintiff to take the registration card and information to the Chilton County Sheriff's office fails to state a constitutionally protected right to which Plaintiff needs protection. Nor is Maturi in a position of authority to facilitate the injunctive relief sought, even if granted against him. Maturi is entitled to be dismissed for failing to state a claim upon which relief may be granted.

Maturi is entitled to qualified immunity. The Eleventh Circuit employs a two-pronged test for determining whether qualified immunity protects a government officer from individual § 1983 liability. *Harlow v. Fitzgerald, 457 U.S. 800 (1982).* To invoke the qualified immunity defense, the officer has the initial burden of proving that he was acting within the

6

scope of his discretionary authority at the time the alleged wrongful act occurred. *Stough v. Gallagher, 967 F.2d 1523, 1526 (11th Cir. 1992); Rich v. Dollar, 841 F.2d 1558, 1562 (11th Cir. 1988); Zeigler v. Jackson, 716 F.2d 847, 849 (11th Cir. 1983).* If this requirement is met, the burden then shifts to the plaintiff to show lack of good faith on the part of the officer. *Stough, 967 F.2d at 1526.* The plaintiff can satisfy this burden only by proving that officer's conduct violated "clearly established" constitutional law or a federal statute. Id. Whether the plaintiff has carried this burden is a question of law for the trial court to decide. *Bailey v. Bd. Of Comm'rs, 956 F.2d 1112, 1126 (11th Cir.), cert. denied, 506 U.S. 832 (1992).*

The officer's burden under the first prong – that is, showing that he acted within the scope of his "discretionary authority" – is a relatively simple task. According to the Eleventh Circuit, all that is required is for the officer to show "objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Rich, 841 F.2d at 1564.* In determining whether this test is met, there is *no* analysis of whether the officer actually acted lawfully. See *Sims v. Metropolitan Dade County, 972 F.2d 1230, 1236 (11th Cir. 1992).* Rather, the issue is whether "the act complained of, if done for a proper purpose, would be within, or reasonably

7

related to, the outer perimeter of [the officer's] discretionary duties." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998). As such, "[i]t is perfectly logical for a court to find that someone who was acting illegally was acting within his discretionary authority." *Godby v. Montgomery Co. Bd. Of Educ.*, 996 F. Supp. 1390, 1401 (M.D. Ala. 1998). It is clear from the allegations of the complaint in this case that the actions complained of on the part of Defendant Chris Maturi were actions undertaken by him in the performance of his official duties as a state probation and parole officer (Complaint, para. 11-14).

By stark contrast, the Plaintiff's burden under the second prong – that is, showing that Maturi violated "clearly established" law – is a heavy and difficult one to satisfy. The Supreme Court's decision in *Anderson v. Creighton, 483 U.S. 635 (1987)*, explains what is meant by "clearly established" law:

> [O]ur cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates

8

>that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 640 *(citations omitted)*. According to the Supreme Court, the impermissible consequence of applying the "clearly established" law test too generally is that "[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging [a] violation of extremely abstract rights." Id. at 639.

In *Hope v. Pelzer, 536 U.S. 730, 741 (2002)*, the Supreme Court stated that the "salient question" for purposes of determining whether a violation of clearly established law has occurred is "whether the state of the law [at the time of the challenged conduct] gave [the government actor] *fair warning* that [his or her] alleged treatment [of the plaintiff] was unconstitutional." (emphasis added). The Supreme Court has cautioned, however, that the inquiry into whether a constitutional right is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz, 533 U.S. 194, 201 (2001)*. See also *Anderson, 483 U.S. at 639-41* (cautioning against identifying constitutional

9

rights at a general level and instead requiring an objective "fact-specific" inquiry based on information possessed by the government actor). Thus, unless a plaintiff in a § 1983 case can point to a case that fairly warns the government actor of the unconstitutionality of the challenged conduct, qualified immunity should protect the officer from liability under 42 U.S.C. § 1983. See e.g., *Wilson v. Layne, 526 U.S. 603, 604 (1999)* (granting qualified immunity where plaintiff could not point to case law existing at the time of the incident which clearly established the rule of law upon which the plaintiff sought to rely); *Saucier, 533 U.S. at 201-02, 209* (granting qualified immunity where the plaintiff had not "identified any case demonstrating a clearly established rule prohibiting the officer from acting as he did . . ."). See also *Vinyard v. Wilson, 311 F. 3d 1340, 1351-1353 (11th Cir. 2002)* (recognizing that, based on the Supreme Court's decision in Hope that unless a constitutional provision directly prohibits the challenged conduct, or a case had previously held the challenged conduct to be unconstitutional under any circumstances, before a government actor may be stripped of qualified immunity, a § 1983 plaintiff must show that case law with "a very high degree of prior factual particularity" had previously determined the conduct to be unconstitutional).

Measured against this standard, the claims alleged against Maturi in the complaint in this case clearly do not pass muster. Plaintiff alleges that Maturi informed him that he would have to "provide a DNA sample, fingerprints and a photograph," Plaintiff proceeded to the Chilton County Sheriff's Department. (Complaint, para. 13-14). These allegations constitute the *sole* allegations of conduct on the part of Maturi in this action.

These allegations do not allege a clear violation of a federally protected right. In 1998, the registration of sex offenders in Alabama was governed by the Community Notification Act, §§ 15-20-20 *et seq.*, Code of Alabama, (1975), and by § 13A-11-200, *et seq.*, Code of Alabama, (1975). By reason of an amendment to the Community Notification Act which became effective August 1, 1998, all persons who adjudicated youthful offenders in sex crime cases were required to register under the Act. See § (2) of Act 98-489, Acts of Alabama, 1998. Act 98-489 amended § 15-20-21(3) of the Act so as to provide that a "conviction" for which registration was required was defined as follows: "A determination of guilt as the result of a plea, trial, or *adjudication as a youthful offender* or a delinquent, regardless of whether adjudication is withheld." (emphasis added). As a consequence of this amendment to § 15-20-21(3), at the time of Headley's registration as a sex offender in September of 1998, persons who had been

11

adjudicated as youthful offenders were required to register as sex offenders under the Community Notification Act. See, e.g., 253 Ala. Op. Att. Gen. 27, 1998 WL 1038074. ("Under the Community Notification Act, youthful offenders are required to register as convicted sex offenders."); Alabama Attorney General Opinion No. 99-0040, p. 2 ("The Community Notification Act, found in Section 15-20-20, *et seq.*, of the Code of Alabama, was amended in 1998 by Alabama Act No. 98-49. . . . After the amendment, the Community Notification Act is now applicable to those adjudicated as a youthful offender.")[1]

The Community Notification Act was substantially amended in 1999 by Act 99-472, Acts of Alabama, which became effective September1, 1999. However, from the time of the enactment of Act 98-489 until the enactment of Act 99-472 , § 15-20-21(3) specifically required registration of persons adjudicated as youthful offenders as sex offenders without qualification. As a consequence, at the time of Plaintiff's registration as a sex offender in September of 1998, and while being supervised on probation by Maturi, Plaintiff was explicitly required under the Community Notification Act to register as a sex offender. No judicial determination by either the Alabama

---

[1] Opinion 99-0040 can be found at http://www.ago.alabama.gov/ pdfopinions/99-0040.pdf.

state courts or federal courts ever had held, at the time that Maturi was alleged to have committed the acts alleged in the complaint in this case, that requiring a youthful offender to register as a sex offender under the Community Notification Act was unconstitutional.[2]  As a consequence, Maturi is entitled to qualified immunity from the plaintiff's § 1983 claims in this action.

### III. This Action Against Defendant Chris Maturi is Barred by Applicable Statute of Limitations

Chris Maturi's actions, as alleged in the complaint, occurred in or before September 1998 (Complaint, para. 11-14). Because he took no action involving this case since that time, any claims arising out of the matters alleged in the complaint, or any possible acts or omissions that he could have committed, are time-barred by the expiration of the two-year statute of

---

[2] In 1999, the provisions of the Community Notification Act were declared unconstitutional as they applied to *juveniles*. See M.W.D., Jr. v. State, 748 So.2d 225 (Ala. Crim. App. 1999) and State v. C.M., 746 So.2d 410 (Ala. Crim. App. 1999). However, these decisions are inapplicable to plaintiff Headley for at least two reasons. First, at the time he registered as a sex offender in September of 1998, Headley was over the age of nineteen years. (See Complaint ¶ 2). As a consequence, plaintiff Headley was not a juvenile as were the plaintiffs in M.W.D., Jr. and C.M.  Instead, Headley was an adult under the terms and provisions of the Community Notification Act, see § 2 of Act No. 98-489, amending § 15-20-21(a)(1), and he was an adult under general Alabama law. See § 26-1-1, Code of Alabama, (1975).  Secondly, Headley's probation supervision under Maturi ended in Dec. 1998 before either of the decisions in M.W.D., Jr. and C.M. was rendered.

limitations applicable to § 1983 claims in federal court in Alabama. See Jones v. Preuit & Mauldin, 876 F.2 1483-84 (11th Cir.1989); Lufkin v. McCallum, 956 F2d. 1104, 1105 (11th Cir. 1992).

## CONCULSION

The motion to dismiss for Chris Maturi is due to be granted and Maturi is due to be dismissed as a defendant in this action.

> s/STEVEN M. SIRMON
> ASSISTANT ATTORNEY GENERAL
> State Bar#: ASB-5949-S61S
> Ala. Bd. Pardons and Paroles
> P.O. Box 302405
> Montgomery, Alabama 36130
> Telephone: (334) 242-8700
> Fax: (334) 353-4423
> steven.sirmon@paroles.alabama.gov

CERTIFICATE OF SERVICE

I hereby certify that I have filed the foregoing upon the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

George W. Royer, Jr.
200 West Side Square
Suite 5000
Huntsville, Alabama 35801

Roianne Holton Conner
250 Winton Blount Loop
Montgomery, Alabama 36117

Done this the 10th day of January 2007.

    s/STEVEN M. SIRMON
    ASSISTANT ATTORNEY GENERAL
    State Bar#: ASB-5949-S61S
    Ala. Bd. Pardons and Paroles
    P.O. Box 302405
    Montgomery, Alabama 36130
    Telephone: (334) 242-8700
    Fax: (334) 353-4423
    steven.sirmon@paroles.alabama.gov